IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ESTATE OF OMAR F. MOHAMED, and
H.R., minor, by her Guardian ad Litem,

        Plaintiffs,        ORDER

and

                   16-cv-651-wmc

STATE OF WISCONSIN DEPARTMENT
OF HEALTH SERVICES, and CONTINUUS,

        Involuntary Plaintiffs

v.

DAIMLER TRUCKS NORTH AMERICA, LLC, and
STERLING TRUCK CORPORATION,

        Defendants.

---

**ORDER APPROVING MINOR SETTLEMENT**

Before the court is petitioner's unopposed request for approval of a minor settlement of all claims H.R. may have against the defendants resulting from her father's death following a motor vehicle accident. (Dkt. #60.)[1] Wisconsin law provides that "[a] compromise or settlement of an action or proceeding to which a minor . . . is a party may be made by the . . . guardian ad litem with the approval of the court in which such action or proceeding is pending." Wis. Stat. § 807.10(1). While the Wisconsin Legislature provides no specific guidance as to what factors should be considered in reviewing a proposed settlement, this court is to determine generally whether "the proposed distribution of settlement proceeds are fair and reasonable and in the best interests of [the

---

[1] Defendants have also moved to withdraw their pending motion to dismiss. (Dkt. #59.) In light of the settlement of the larger lawsuit as a whole, that motion will be denied as moot.

minor]." *In re Glaser*, No. 05CV1319, 2005 WL 2491542, at *1 (Wis. Cir. Ct. Dane Cty. Apr. 25, 2005).

As proposed, the settlement calls for a total payment of $825,000, from which 40% ($330,000) is to be taken off the top for attorneys' fees, which are to be split evenly between the law firms of Bye, Goff & Rohde, Ltd. and Murphy & Practhauser, S.C. (Dkt. #60 at 2.) From the remaining $495,000, an additional $68,534.88 is to be paid to the Murphy law firm to reimburse disbursements made. (*Id.*) The remaining $426,465.12 is augmented by the Bye law firm's client trust account balance, creating a subtotal of $479,657.07.[2] (*Id.* at 3.) From that total, $84,518.94 is to be deducted for third parties (the Wisconsin Department of Health Services, Rawlings Company, LLC, and Inclusa, Inc.), leaving $395,138.13 to be deposited into a structured settlement for H.R. (*Id.*) The structured settlement is to provide $10,000 to H.R. the day after her 18th birthday, and monthly payments of $500 for seven years until 2038, followed by guaranteed lump sums ranging from $100,000 to $393,500 between April 24, 2038 and April 24, 2058. (*Id.* at 25.) The guaranteed yield totals $1,145,500. (*Id.* at 26.)

The guardian ad litem, *C.M. Bye*, a member of the Bye law firm and one of the plaintiffs' lead counsel, represents that he "thoroughly investigated the question of liability and the advisability of accepting the offer of settlement," as well as "the nature of the incident," and has concluded that the settlement is in the best interest of his charge. (*Id.* at 3.) The court does not doubt that the guardian ad litem engaged in just such a thorough

---

[2] Specifically, the balance in the trust account is listed as $53,191.95-$310.00. (*See* dkt. #60 at 3.)

investigation and will defer to his legal judgment with respect to the merits, damages and risks associated with the claims against defendants, where the interests of counsel and client are generally aligned. However, the court is to give substantially less deference with respect to fee arrangements in light of the inherent conflict of interest between counsel and a vulnerable client. *See Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1110-11 (7th Cir. 1982) (recognizing federal courts' oversight responsiblity where "the client is unable to fully protect his own interests," such as children, particularly where the court "cannot assume that counsel will necessarily protect those children's interests that are directly in conflict with [the lawyer's] own financial well-being"); *see also id.* at 1111 ("Even when the validity of the fee contract itself has not been challenged by the parties, it is within the court's inherent power of supervision over the bar to examine the attorney's fee for conformance with the reasonable standard of the Code of Ethics.").[3]

In evaluating a fee contract's reasonableness in particular, a court "is not limited to the face of the contract." *Id.* at 1113. Rather, under Wisconsin law, the fee arrangement is "to be used only as a guide [in] calculating reasonable attorneys['] fees." *Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶¶ 3, 41, 281 Wis. 2d 66, 697 N.W.2d 73. While the court has wide discretion in arriving at a reasonable fee, *id.*, Wisconsin "Supreme Court Rule 20:1.5(a) lists factors [to] help determine" that fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[3] If counsel had wanted to be bound by the fee agreement, it could, of course, have sought court approval at the outset. Although, in fairness, such approval was unlikely in this case given the lack of any graduated percentage of the recovery based on the stage of the case or amount at which H.R.'s claim ultimately settled.

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.
>
> Although each factor need not be examined, the circuit court must consider all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure.

*Id.* ¶ 37 (internal quotations and citations omitted); *see also Rosquist*, 692 F.2d at 1113 n.9 (listing similar factors for considering reasonableness of attorneys' fees) (citing *Carter v. Montgomery Ward and Co.*, 76 F.R.D. 565, 569 (E.D. Tenn. 1977)). The court is not bound to consider all of these listed factors; rather, it "must consider all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure." *Vill. of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204 496 N.W.2d 57 (Wis. 1993) (internal citations omitted); *see Anderson*, 2005 WI 62 ¶¶ 56-61, 63-65 (Bradley, J., concurring) (explaining how the factors listed in Supreme Court Rule 20:1.5 "provide little guidance for the determination of the reasonableness of the contingent fee" and describing how the *Meyer* court modified the meaning of considered factors to evaluate the contingency fee arrangement).

Considering all the factors here, the court finds that a 33 and 1/3% -- instead of the proposed 40% -- attorneys' fee is more than reasonable. As for factor 1, crashworthiness

products liability cases typically involve more specialized legal knowledge, higher risks and substantial, upfront investments than other products liability cases. (*See* Llaurado Aff. (dkt. #65-3) ¶ 6 ("Vehicle crashworthiness cases are time intensive, risky and expensive. It is not unusual to spend over Five Hundred Thousand ($500,000.00) Dollars in out-of-pocket expenses to prosecute these types of cases."); Rottier Aff. (dkt. #65-1) ¶ 4 ("In design or manufacturing defect cases against large automotive defendants, it is anticipated that out of pocket disbursements will reach approximately $500,000.00 if the case is tried.").) Certainly, counsel was able to take advantage of prior experience with crashworthiness cases. (*See* Llaurado Aff. (dkt. #65-3) ¶¶ 4-5 (testifying "[v]ehicle crashworthiness cases are highly specialized cases" and that Murphy & Prachthauser and Bye, Goff and Rohde have worked as co-counsel "on other vehicle crashworthiness cases for over twenty (20) years").) However, in this case, (1) counsel settled at a relatively early stage (following briefing on a motion to dismiss and during the course of discovery) and (2) the resolution required far less than the expected $500,000 in expert and other expenses. (*Compare* Llaurado Aff. (dkt. #65-3) ¶ 6 (testifying not unusual for disbursements to reach $500,000 if tried) *with* Case Cost Report (dkt. #64-1) 3 (subtotal for expenses in this case total $114,677.93).) Even accounting for counsels' practice of accounting for the risks of this (and in other cases) not settling early, both of these factors support a reduction in counsels' fee recovery.

As for factor 2, plaintiffs' counsel *may* have had to turn down some other contingency cases to devote the necessary upfront investment in time and money, nothing in this case suggests extraordinarily so, especially given counsels' expertise and the shared

5

resources of two law firms. Nor, in any event, would this necessarily be apparent to the client. Similarly, turning to factor 3, "the fee customarily charged in the locality for similar legal services," the court's own impression of the market, including its reading of counsels' submissions here, is that a quarter to one-third recovery would be a more typical attorney's fee for a case that settled this early. While counsel did submit an affidavit by Philip Sieff, a Minnesota partner at Robins Kaplan LLP, who represents personal injury plaintiffs around the country, opining that "[t]he customary fee charged by a plaintiff's lawyer for a products liability case of substance is 40%, usually in addition to reimbursement of costs and expenses" (Sieff Aff. (dkt. #64-3) ¶ 4), the affidavit of Daniel A. Rottier, the Wisconsin-based president of Habush Habush & Rottier, S.C., is more equivocating. (Rottier Aff. (dkt. #65-1) ¶¶ 4-5). Indeed, while Rottier avers that for "design or manufacturing defect cases against large automotive defendants, . . . it is not at all unusual to charge a forty percent contingent fee on the total recovery," he also acknowledges that his firm's "practice is to make a judgment at the beginning of the case . . . and charge either a one-third or forty percent contingent fee." (*Id.* at ¶¶ 4-5.) Based on his "familiar[ity] with the practice of many large plaintiffs' litigation firms around the country," Rottier carefully avers that "charging forty percent as a contingent fee is not at all unusual" and "the predominant approach" "in many states," but by implication not necessarily in Wisconsin. (*Id.* at ¶¶ 4-6.) On balance then, the court finds that a truly independent guardian would have been able to negotiate a better fee arrangement, perhaps as low as 25% and certainly no more than $33\frac{1}{3}$% for such an early settlement.

As for factors 4 through 6, to the extent applicable at all, they are neutral here. This

leaves factors 7 and 8.  While H.R. was certainly represented by quality counsel, they are certainly no more qualified than their Wisconsin counterpart, Rottier, who declined to aver to a hard 40% recovery.  Finally, at factor 8, "whether the fee is fixed or contingent," the fee agreement here provides for just such a hard minimum 40% contingency fee with no accounting for the timing or size of recovery.  (*See* dkt. #60 at 23.)  While the court appreciates that counsels' law firms may have adopted a standard 40% final fee for all contingency crashworthiness cases, perhaps legitimately so based on an average return for all such cases to those firms, the court finds it more likely than not that a number of equally fine, qualified law firms were available in the Wisconsin legal market who would have taken this suit on at a graduated rate, given the relatively small investment upfront and sizable early recovery, and especially given that this was a follow-on claim of a child by counsel already representing the child's father (and then his estate).

Accordingly, the court finds a one-third fee is a more reasonable fee award.  As such, the court approves a total attorneys' fee of $275,000, which is to be split evenly between the Bye and Murphy law firms.  From the remaining $550,000, $68,534.88 will be deducted and paid to the Murphy law firm as reimbursement for expenses.  The remaining $481,465.12 will be augmented by the Bye law firm's client trust account balance, creating a subtotal of $534,657.07.  From that amount, $84,518.94 is to be deducted for the aforementioned third parties, leaving $450,138.13 to be deposited into a structured settlement for H.R.  The structured settlement should be updated accordingly.

7

ORDER

THEREFORE IT IS ORDERED that:

1) Defendants' pending motions to dismiss (dkt. #45) and to withdraw their motion to dismiss (dkt. #59) are DENIED AS MOOT.

2) The settlement of claims on behalf of H.R. and the proposed distribution of her settlement proceeds as set forth in the petition (dkt. #60) is APPROVED subject to the modification to the attorneys' fee request as set forth above.

3) Guardian ad litem, C. M. Bye, is AUTHORIZED TO ACCEPT the offer of compromise and settlement made on behalf of the defendants. He shall likewise EXECUTE AND DELIVER all necessary and proper releases to defendants for any and all claims arising out of the injuries sustained by H.R. in this matter. Following these actions, he is further DISCHARGED as guardian ad litem.

4) The clerk of court is directed to CLOSE this case.

Entered this 23rd day of January, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge